ful trespass by removing the support of a side wall which caused it to fall, as was the fact in that case, and the wrongful trespass of. disconnecting the shafts in the demised premises from the steam plant in the present case, are the same in principle and cannot be distinguished. Each was a trespass which destroyed the beneficial use for which the premises were leased. The later case of Witherbee v. Meyer, 155 N. Y. 446, 50 N. E. 58, is not applicable. There the action was, and only could be, for damages for a breach of covenant in the lease that the water power leased with the grist mill was sufficient to run the mill to its full capacity. It was sufficient to run it, but the complaint was that it was not as great as the lease called for. The rule of damages allowed was the difference between the rental value with the maximum power covenanted for and the power as it was. But suppose the landlord had wrongfully torn down the dam and deprived the tenant of all power? The case would then have been the same as the present one and that of Snow v. Pulitzer. Moreover loss of profits may be recovered in an action for damages for breach of contract, for there are many exceptions to the general rule which is deemed to be to the contrary, if it were necessary to go into that. Bagley v. Smith, 10 N. Y. 489, 61 Am. Dec. 756; Wakeman v. Wheeler & Wilson Co., 101 N. Y. 205, 4 N. E. 264, 54 Am. Rep. 676; Thomson-Houston Co. v. Durant Co., 144 N. Y. 34, 47, 39 N. E. 7.

The judgment should be reversed.

Judgment reversed, and new trial granted; costs to abide the event. All concur, except HOOKER, J., who dissents.

---

## CITY OF BUFFALO v. DELAWARE, L. & W. R. CO. et al.

(Supreme Court, Equity Term, Erie County. September, 1908.)

1. CONSTITUTIONAL LAW (§ 291*)—DUE PROCESS OF LAW—RAILROAD BRIDGES.

In 1882 defendant railroad companies built a fixed bridge across a river in Buffalo. Laws 1884, p. 254, c. 201, made any bridge theretofore built and any swing or draw bridge thereafter built a lawful structure. Laws 1906, p. 1442, c. 527, § 9, requires all railroad bridges rebuilt over the proposed navigable channel of the river to be such as may be determined upon by the city council, to be rebuilt at the company's own expense. The city council requires them to be draw or lift bridges. Defendants threaten to rebuilt a fixed bridge, utilizing part of the old superstructure, but making practically a new one, placing thereon an entirely new superstructure. *Held,* that while defendants may have a vested right to maintain the old bridge as long as they care to, the act of 1906 is valid, and not unconstitutional as a deprivation of property without due process of law, so far as it prevents defendants from rebuilding a fixed bridge. --

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 291.*]

2. NAVIGABLE WATERS (§ 20*)—OBSTRUCTION OF NAVIGATION—BRIDGES.

The Supreme Court will enjoin railway companies from rebuilding a fixed bridge across a river where it will become an unlawful obstruction to navigation, but will suspend operation of the decree where it appears that a swing or a draw bridge will not be needed within two years and cannot be built short of several months, and that the old bridge has been condemned, and that a temporary fixed bridge can be readily erected.

[Ed. Note.—For other cases, see Navigable Waters, Dec. Dig. § 20.*]

Action by the city of Buffalo against the Delaware, Lackawanna & Western Railroad Company and another.    Judgment for plaintiff.
See, also, 126 App. Div. 125, 110 N. Y. Supp. 488.

Louis Desbecker (Samuel P. Moran, of counsel), for plaintiff.
Rogers, Locke & Babcock (L. L. Babcock, of counsel), for defendants.

BROWN, J.   In 1882 the defendants constructed a through-truss, two-span, double-track, fixed bridge across Buffalo river, having 14 feet clearance above mean water level, about 800 feet southwest of Abbott Road, in the city of Buffalo, under a franchise duly granted by the plaintiff, which did not specify any details for such bridge. In 1884, by chapter 201, p. 254, of the Laws of that year, the Legislature, by amendment to plaintiff's charter, enacted:

"Buffalo river within the city is a public highway, but any bridge heretofore built over the same and any swing or draw bridge hereafter built over the same within the city by authority of the common council is a lawful structure."

In February, 1907, defendants asked consent of plaintiff to its renewal of the truss bridge by building a two-span, two-track, plate-girder, fixed bridge, with new concrete abutments and pier. The common council of plaintiff declined to give such consent. In May, 1907, the defendants were notified of the action of the common council in determining that only draw of lift bridges should thereafter be erected across the river as improved under chapter 527, p. 1439, Laws 1906, and as required by section 10 of that act (p. 1442). Thereafter, the defendants threatening to build a new fixed bridge at the location of and in place of the bridge erected in 1882, the plaintiff brought this action to restrain the same—the contention of the plaintiff being that the building of such a bridge will make it an unlawful structure; that plans for deepening, widening, and putting the river into a navigable condition have been adopted; that such fixed bridge will prevent such work and navigation, and constitute a nuisance; and that by the provisions of chapter 527, p. 1439, of the Laws of 1906, defendants must install a swing or draw bridge at their own expense. The contention of the defendants is that they are simply renewing in part the bridge of 1882, are not building an entire new bridge, but are repairing the same, and that, instead of making new concrete abutments and piers, as stated in their application for consent in February, 1907, they are to remove three top courses of stone of those foundations, cap them with slabs, and widen the abutments with concrete, utilizing several courses of stone and foundations of the present abutments and pier; that by placing on such foundations as thus repaired a new, two-span, girder bridge it will be the same bridge that was designated in 1884 by the Legislature as a lawful structure, and that chapter 527, p. 1439, of the Laws of 1906, is unconstitutional, in that it requires existing fixed railroad bridges over Buffalo river to be replaced with swing or draw bridges at the expense of the railroads.

While it is true that the Legislature has said in effect that the present bridge of the defendants is a lawful structure and that any bridge

"hereafter built," in order to be a lawful structure, must be a swing or draw bridge built by authority of the common council, yet that enactment must be construed with reference to the demands of the river for navigation purposes. It was legislation upon the subject of making Buffalo river navigable for lake-going craft by deepening and widening the river. The authority claimed by the plaintiff to put and maintain the river in navigable condition is derived from the revised charter of 1870 (Laws 1870, p. 1205, c. 519, § 16), tit. 9, while section 15 of the same title, by amendment· in 1884, is the authority relative to swing or draw bridges. It is apparent that the only necessity for swing or draw bridges is to permit navigation, and the legislative scheme to put and maintain the river in a navigable condition is to deepen and widen the channel by dredging and by removing obstructions in the shape of fixed bridges, by replacing them when rebuilt with swing or draw bridges. This scheme must be considered as a whole, and when the program of making the river navigable by actual dredging, deepening, and widening has reached such a stage that a clear channel unobstructed by bridges is needed for the progress of the work and navigation, and a "bridge hereafter built" is to take the place of a bridge existing in 1884, it must be of a swing or draw type.

The claim that this section of the charter of plaintiff is unconstitutional, because it deprives defendants of a valuable property right without due process of law, is founded upon the fallacy that defendants under their franchise have a vested right to forever keep and maintain a fixed bridge at the point in question; that, the Legislature having in 1884 declared that the fixed bridge then existing was a lawful structure, all fixed bridges thereafter built at that river crossing must likewise be lawful structures. It may be true that the defendants have a vested right to keep and maintain the bridge of 1884 as a fixed bridge as long as they care to, and any interference with that right by the Legislature might be prohibited by the Constitution; but the defendants are going to in fact abandon the bridge of 1884, and the bridge referred to by the Legislature in fact goes out of existence. The defendants' franchise right to cross the river is not interfered with in the slightest degree. Simply the manner of crossing is regulated, and then only when the defendants completely remove all of the structure that has been declared to be lawful; and the manner of crossing is regulated only to the extent of saying that the defendants must so cross as not to interfere with navigation.

The bridge which the defendants contemplate erecting over Buffalo river will not be an obstruction to any navigation of a practical character for at least two years. When the work of deepening the channel to a sufficient depth to permit navigation therein by lake-going craft and for a distance of about two miles from the south line of lot 65 up the stream shall have been completed, then, and not till then, will a fixed bridge in any manner obstruct navigation. Before there can be any justification for compelling the defendants to incur the large expense of installing a swing or draw bridge for their traffic across Buffalo river, there must be a condition showing a reasonable,

practical necessity therefor.   While it may be said that the present plans of river improvement demonstrate that in the execution of these plans a swing or draw bridge will be essential at the place of the present crossing, yet actual excavations and dredging for the purposes of navigation at this point will not occur for a long time.   Plans have been adopted placing the excavated channel at points under the defendants' railroad where a swing or draw bridge at the location of the present bridge would be utterly useless.   Modifications of such plans place the proposed channel under defendants' present bridge, and the placing of a new fixed bridge at this point would prohibit the execution of these plans.   Defendants cannot be permitted to erect an entirely new bridge, saving only a few courses of stone of substructure, at this time, simply calling it a renewal of a part of their bridge as it existed in 1884, and thus defeat the city in its right to compel the erection of a swing or draw bridge when river improvement and navigation demand it.   The city's right to thus regulate the manner in which the defendants may exercise their right of franchise to cross Buffalo river is paramount and superior to any right the defendants have to cross the river.

The present bridge of defendants, while it existed in 1884, at the time the statute was passed declaring it a lawful structure, will no longer exist when the defendants have done the things they proved on the trial they were going to do.   The proof is that the foundations, the abutments, and pier are in a greatly damaged condition, cracks existing perpendicularly through courses of stone necessitating rebuilding; that defendants intend removing the entire superstructure, several courses of stone of substructure, make a larger, higher, heavier, more substantial structure, utilizing a few courses of stone of the present abutments and pier, practically making a new foundation, and placing thereon an entirely new girder bridge of modern type. If this is not a new bridge and a new foundation, it is difficult to define one.   If it is not a "bridge hereafter built," in the language of the statute, the use of one single foundation stone of the old substructure would defeat the right of the city to compel a swing or draw bridge to be erected at any time in the future.   The only vested right the defendants have by their franchise and this statute is to cross Buffalo river, a public highway, and use in such crossing the bridge that existed in 1884.   When that bridge by reason of any fact goes out of existence, the enforcement of the undoubted prerogative of the city to say that a bridge built to take its place must be of a swing or draw type, when the progress of the work of river improvement and navigation demand it, in no manner infringes upon or imperils defendants' franchise or any of their vested rights.

The only reason why the defendants obtained a franchise permitting it to cross the Buffalo river was that they intended to use such crossing for a public purpose.   To allow them to erect a new permanent fixed bridge would permit the exclusion by them of the public from the river for navigation purposes.   The purpose of navigating the river is quite as important as the public purpose claimed to be exercised by the defendants in crossing the river.   When the defend-

ants propose to abandon and do away with the bridge that existed in 1884, the Legislature has undoubted power to do whatever is necessary and proper for the public welfare in the control and regulation of the way and manner in which a new bridge is to be built for the use of the defendants in crossing the river under their franchise. That power has been expressed, so as to provide that, when river improvement work and navigation require it, such crossing of that river by a public highway must be by swing or draw bridge; and the defendants have no legal right to erect any other kind for permanent use.

The plaintiff, through its common council and commissioner of public works, has notified defendants that all bridges hereafter constructed across the Buffalo river shall be draw or lift bridges. Section 9, c. 527, p. 1442, of the Laws of 1906, provides that all railroad bridges rebuilt over the proposed new or improved channel of the Buffalo river shall be such bridges as may be determined upon by the common council; that such bridges shall be built at the expense of the railroads. The validity of this statute is attacked by the defendants upon the ground that it is unconstitutional; that it is the taking of property without due process of law. The fact that defendants are compelled to build their own bridges at their own expense in no way infringes upon their constitutional rights. The defendants assert that the exigencies of their business compel them to build a new bridge. The statute in no manner compels the defendants to rebuild this bridge. The plaintiff is not seeking to compel defendants to build a bridge. The simple fact is that defendants have decided and determined, independently of the statute, that they will build a new fixed bridge, and are threatening so to do, and the plaintiff seeks simply to prevent the building of a bridge that will prohibit navigation. The reasonable regulation by plaintiff by any means within its power of the manner in which defendants shall construct their new bridge does not infringe upon any constitutional rights of defendants, even if it does compel them to pay the expense of complying with such regulations. So far as chapter 527, p. 1439, of the Laws of 1906, applies to the issues raised in this action it is a valid enactment.

The defendants claim the right to erect a new girder fixed bridge in place of the one now in use, and that such structure, when completed, will secure to the defendants the same right to maintain and operate it as a fixed bridge that they have had concerning the present bridge since 1884. The defendants are about to erect such a bridge, and, such act being without right or authority, they will be restrained from so doing by the decree to be entered hereon. The rights of the parties do not demand the immediate execution of such decree. To immediately restrain defendants from building a fixed bridge means that a temporary fixed bridge could not be built, and that nothing but a swing or draw bridge would be a lawful structure. To manufacture a swing or draw bridge suitable for the excavated channel and install it in operation would take months, if not years, of time. The defendants' present bridge has been condemned by the Public Service Commission. It is unsafe for further use. It is in defective condition. It is far too light for defendants' traffic. The defendants must

provide some temporary means of crossing the river, and they cannot comply at once with such a decree. The defendants have upon the ground a new girder bridge that can be assembled and put in place of the present bridge, upon foundations to be rebuilt, in a comparatively short time. Such temporary use of the material at hand will be without detriment to its use in some other structure in the future. A swing or draw bridge will not actually be needed within two years. Actual dredging will not begin at the location of the bridge before that time, and practical navigation will not be possible for a long time.

In view of these facts I am disposed to suspend the operation of the restraining and injunctive features of the judgment to be entered hereon for 18 months. If at the expiration of that time it should appear that the necessities of river improvement work and navigation do not demand a swing or draw bridge, application may be made to this court on the foot of this judgment for such further suspension of the restraining and injunctive provisions of the judgment as the court at that time may grant.

Judgment accordingly ordered in favor of the plaintiff against the defendants, with costs.